UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.                                                     **DECISION AND ORDER**
                                                                   19-CR-221-A

THADDEUS COLEMAN, JR.,

                     Defendant.

---

      In this single-count, single-defendant case, Defendant Thaddeus Coleman, Jr. is charged with felon in possession of firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The incident giving rise to this charge was a controlled buy that took place on or about August 16, 2018 (Dkt. No. 11). The Court assumes the parties' familiarity with the prior proceedings and the issues that are under review.

      This case was referred to Magistrate Judge Michael J. Roemer pursuant to 28 U.S.C. § 636(b)(1) for the conduct of pretrial proceedings. On December 17, 2021, Magistrate Judge Roemer issued a Decision and Order ("D&O") (Dkt. No. 71) denying Defendant's omnibus pre-trial motions, including Defendant's demand for extensive, alleged *Brady/ Giglio* material, which is discussed further below.

      Defendant filed an appeal (Dkt. No. 75) of the D&O on January 3, 2022. The Government filed a response in opposition (Dkt. No. 79), and Defendant filed a reply (Dkt. No. 80). Oral argument of Defendant's appeal was held on February 23, 2022

(*see* Dkt. Nos. 82, 85 [Oral Argument Tr.]), with the Court noting that it could not resolve certain issues based on the record before it.  Defense counsel was directed to file a list of proposed issues Defendant is seeking the Magistrate Judge to resolve and/or reconsider, and the Government was to respond to that proposal.  The parties thereafter filed those papers (Dkt. Nos. 83, 84), and the Court held a status conference concerning those submissions on April 6, 2022.

The Court has carefully reviewed the record, as well as the parties' filings, and hereby concludes that it was not clearly erroneous or contrary to law to deny certain discovery demands by Defendant, but that other issues set forth in this Decision and Order shall be referred back to the Magistrate Judge for resolution and for a possible hearing.

## DISCUSSION

The standard of review for a D&O concerning non-dispositive motions is that the district court "may reconsider" any such matter "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

**Denial of Requests for Bill of Particulars and Informant's Identity**

The Court concludes that it was not clearly erroneous or contrary to law for the Magistrate Judge to deny Defendant's request for a bill of particulars or request for the Government to disclose the identity of the Confidential Source ("CS").

**Denial of Request for Disclosure of Information Concerning the Relationship Between A.H. and Defendant**

The Court likewise finds no clear error in the Magistrate Judge denying Defendant's request for disclosure of information concerning the relationship between Defendant and A.H., the latter who was charged in two counts of the Criminal Complaint in this case. A.H. is not charged in the operative charging instrument, the Indictment.[1] Specifically, Defendant wants the Government to confirm that A.H. told the Government that at the time of the gun sale he did not know Defendant and had never spoken with him before. As Defendant explains, this is exculpatory information because it calls into question how Defendant effectuated the gun sale instead of A.H., information that the Government "has continuously refused to acknowledge."

The Magistrate Judge denied this request for confirmation from the Government. He reasoned that information regarding the relationship between A.H. and Defendant is irrelevant to whether Defendant was a felon in possession of a firearm and ammunition, which is the sole charge in the Indictment – it is not a

---

[1] The three-count Criminal Complaint (Dkt. No. 1) charged one count against Defendant for felon in possession of firearm and ammunition (in July 2018, not August 16, 2018, as charged in the Indictment), and two counts against A.H. for possession with intent to distribute cocaine (as alleged, on two separate dates in July 2018). The affidavit supporting the Criminal Complaint alleges that A.H. and a CS arranged to meet to exchange cash for cocaine and handguns. Two separate controlled buys of cocaine took place, both in July 2018. Then, in August 2018 (this is the conduct that Defendant argues appears to be charged in the Indictment against Defendant), A.H. and the CS spoke on the phone and agreed to the cost of handguns, and a location to meet and exchange cash and the handguns. However, instead of A.H. meeting the CS at the agreed-upon location, it was Defendant who walked out to the CS with a handgun. Defendant argues this is "illogical" or "makes no sense" because A.H. was the one who arranged the meeting.

Defendant argues that he should be provided with the telephone call between A.H. and the CS, which he believes was recorded, as well as "various statements by A.H. which were exculpatory or[ ] potentially exonerating to [D]efendant."

3

charge of conspiracy or sale of the firearm.  The Government also stated that the CS had neither changed his or her statements about knowledge of the relationship nor made any self-contradictory statements.  The Government reasoned that Defendant may cross-examine the CS at trial with this allegation that A.H. and Defendant did not know each other, but Defendant is not entitled to the alleged Brady information that he already possesses.  *See United States v. Le Roy*, 687 F.2d 610, 619 (2d Cir. 1982) ("The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."), *cert. denied* 459 U.S. 1174 (1983); *Vaknin v. United States*, Civil Action No. 08-CV-02420 (DGT), 2010 WL 3394659, 2010 U.S. Dist. LEXIS 86254, *45 (E.D.N.Y. Aug. 23, 2010) ("there is no *Brady* violation because the alleged 'Brady' material simply would have confirmed what [the petitioner] already knew" as he was aware of the "essential facts" that would have allowed him to take advantage of any exculpatory evidence).

While the Court agrees with the Magistrate Judge's reasoning, it notes an internal inconsistency in the Government's papers.  The Government states that it "intends to call the CS at a potential trial" and therefore he or she will be subject to cross-examination on this topic, *i.e.*, A.H.'s relationship with Defendant.  However, on the issue of whether the Government should reveal the CS's identity, the Government states, "the CS involved in the transaction is not an essential witness and may not be called as a trial witness."  *Compare* Dkt. No. 79, p. 19 *with* Dkt. No. 79, p. 14.  The latter calls into question the Government's qualified privilege to

withhold information concerning the identities of confidential informants that it does not intend to call as witnesses at trial.  See *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  Indeed, on page 20 of the Government's opposition to Defendant's objections, it states, "[d]ue to the passage of time since prior motions have been filed, the [G]overnment is currently undecided as to whether or not it will call the CS as a witness.  If it determines to call the CS as a witness, all of the CS's Jencks Act and *Giglio* materials will be provided."

The Court hereby directs the Magistrate Judge to revisit Defendant's demand for disclosure of the CS's identity and demand for information concerning A.H.'s relationship with Defendant only if the Government's decision whether or not to call the CS as a witness at trial changes that calculus.

**Audio Issues with Video Recording of Controlled Buy of Handgun**

Defendant also appeals from the Magistrate Judge's rejection of his request concerning a lack of audio in the surveillance video turned over to the defense, pursuant to Federal Rule of Criminal Procedure 16(a)(1).[2]

The D&O explains, "[t]he Court directed the Government to verify with law enforcement agents whether some, none, or all of the original recording contained audio."  The D&O continues that the Government's supplemental response "affirmed that it had reviewed the recording and confirmed with DEA agents that the recording contains video images only and there is *no audio* from the transaction . . . The Court

---

[2] The entire video was made available to defense counsel for an "attorney's eyes only" review because the video revealed the CS's identity.  Defendant, therefore, had access to only still photographs and video clips that showed just himself on the screen, and not the CS.

5

finds that the Government has satisfied its discovery obligations in this regard" (Dkt. No. 71, p. 9 [emphasis added]).

Defendant objects to the D&O's finding, explaining that there is sound at the beginning of the video and then the audio "suddenly and mysteriously" turns off and there is no sound for the remainder of the video.  Thus, Defendant wants to know why the audio cut out, and questions whether the CS turned off the sound.  He explains that "[t]he audio portion of the tape recording [is] critical" to his defense, and that he believes the audio was not turned off due to a technical malfunction but rather a "manipulation of the tape by others."

The Government preliminarily responds that Defendant is raising, for the first time, the allegation that the audio on the videotape was "manipulated," as he did not make this argument in his papers before the Magistrate Judge or at the November 3, 2021 oral argument on Defendant's omnibus motions.

The Court will address the argument on the merits because the November 3, 2021 oral argument transcript is not on the Docket and the Government has not provided a copy of that transcript to the Court.  Moreover, general argument about the missing audio was evidently raised before the Magistrate Judge, who addressed it in the D&O.

The Government argues in the alternative that the lack of audio is not exculpatory and is simply a matter for cross-examination.

The Court concludes that it is speculative for Defendant to suggest there may be no audio because someone purposefully manipulated the video.  Even so, the D&O's finding that there was no audio in the video recording whatsoever—as

6

apparently previously represented by the Government—is erroneous.  Indeed, it was unclear to the Court from the Government's papers on appeal whether there was no audio at all or whether there was audio, but with some audio missing.  *Compare* Dkt. No. 79, p. 21 (conceding the video may have "not capture[d] all the audio") with Dkt. No. 79, p. 5 n.1 (alleging that the video "was provided to defense counsel without any audio on the disc" and that upon the AUSA's review of the record and confirmation with DEA agents, "there is no audio of the transaction, it is video only").

The Government finally explained during oral argument on the D&O appeal that the initial portion of the video has audio but "then it cuts off," with the remainder of the video being silent.  According to the AUSA, the DEA relayed that the audio cutting out was "just a technical issue."  Dkt. No. 85, p. 6; *see* Dkt. No. 84, p. 3 ("while there is audio throughout a majority of the video recording, there is a portion of the video recording that lacks audio").

The Magistrate Judge is directed to revisit Defendant's demand concerning the lack of audio on the video recording, only if the finding that there is some audio but the audio "cuts out" partway through the video changes the Magistrate Judge's analysis of the Government's Rule 16 discovery obligation.

**Case Agent Joseph Bongiovanni's Indictment and *Brady/ Giglio* Issue**

Upon clear error review, the Court hereby refers the *Brady/ Giglio* issue back to Magistrate Judge Roemer for resolution and a possible hearing.

Pursuant to the *Brady* doctrine, the prosecution must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The Government's duty is

to disclose information to the defense whose exculpatory value is obvious, even when the defendant has not requested it. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). *Brady* evidence includes evidence that not only affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of the Government's witnesses, the latter which constitutes *Giglio* material. *See Giglio v. United States*, 405 U.S. 150, 154-155 (1972). In a sense, then, "*Giglio* evidence may more properly be thought of as a subset of *Brady* evidence." *United States v. Siddiqi*, 06 Cr. 377 (SWK), 2007 WL 549420, 2007 U.S. Dist. LEXIS 15410, *13 (S.D.N.Y. Feb. 21, 2007).

The Second Circuit has found that the failure to make pretrial disclosure of exculpatory information violates the *Brady* doctrine when it deprives the defense of a reasonable opportunity to investigate the information or otherwise use it effectively. *See United States v. Coppa*, 267 F.3d 132, 144-146 (2d Cir. 2001). Where there is a specific reason to believe that a Government file contains exculpatory material, the trial court may be required to conduct an *in camera* review of the file. *See United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989) (remanding for *in camera* review of agent's personnel file, to determine whether it contained material impeachment information).

Defendant's demand is for extensive, alleged *Brady/ Giglio* material regarding former DEA Special Agent Joseph Bongiovanni, who Defendant alleges was the lead agent on this case at the time of the controlled buy. According to Defendant, DEA-6 reports indicate Bongiovanni had direct contact with the CS and may have arranged for the controlled buy to take place.

Again, the controlled buy in this case occurred on August 16, 2018.  On October 31, 2019, Bongiovanni was indicted in this District before District Judge John L. Sinatra, Jr. with a variety of charges, including conspiracy to defraud the United States, conspiracy to distribute controlled substances, public officials accepting a bribe, obstruction of justice, and false statements to an agency of the United States.  *See United States v. Joseph Bongiovanni*, 19-CR-227-JLS-MJR, Dkt. No. 1.  The indictment has since been superseded twice, with two co-defendants added and additional charges.  *See* 19-CR-227, Dkt. Nos. 46, 89.  In sum, it is alleged that from 2008 through June 2019 (which encompasses the timeframe of the controlled buy in the instant case), Bongiovanni used his position as a DEA Special Agent to protect his co-conspirator drug traffickers, who paid him at least $250,000 in bribes to do so.  It is alleged that these drug traffickers are associated with "Italian Organized Crime" in the Western District of New York.

In other words, Bongiovanni, acting in his capacity as a DEA agent, protected the co-conspirators from getting caught or charged with their illegal acts by, among other things, lying to other law enforcement officials about ongoing investigations; making false entries in DEA-6 reports and other official documents; and providing information about investigations, witnesses, and confidential sources to drug traffickers.

Because of these charges, the defense in this case sought disclosure of a multitude of information and documents regarding Bongiovanni.[3]  In the D&O,

---

[3] Defendant seeks the following as to Bongiovanni: "(1) Bongiovanni's personnel file; (2) investigatory files from law enforcement agencies or the United States Attorney's Office regarding the charges pending

9

Magistrate Judge Roemer denied Defendant's motion to compel production of this material as moot but directed the Government to disclose to the Court anything in the *Bongiovanni* case file referencing Defendant's name or constituting *Brady* material related to Defendant.

Magistrate Judge Roemer reasons that if the Government were to call Bongiovanni as a witness at Defendant's trial, the information sought by Defendant as to Bongiovanni's criminal acts is relevant *Giglio* material the Government would be required to disclose, to impeach Bongiovanni with.  However, at this juncture, Magistrate Judge Roemer reasons, the Government has asserted that it is unaware of any exculpatory material related to Bongiovanni and states that it does not intend to call him as a witness at trial,[4] and "[t]hus, the Government does not have an obligation to produce those documents and records as impeachment material at this time."  Dkt. No. 71, p. 14.  The Magistrate Judge also reasons that because the Government stated it intends to rely on the testimony of other agents who were involved in the investigation of Defendant instead of Bongiovanni, that evidence "does not depend on the integrity of Bongiovanni" and does not constitute *Brady/Giglio* material.  According to the Magistrate Judge, the Government represented that there is no evidence Bongiovanni committed misconduct during this

---

against Bongiovanni or any illegal conduct alleged against him; (3) any internal affairs investigations and any disciplinary reports; (4) evidence of Bongiovanni's official misconduct whether related or not to defendant Coleman; (5) any evidence to impeach the credibility of Bongiovanni relative to this case or others[;] . . . [and] (6) evidence regarding Bongiovanni's relationship to the [CS] and all exculpatory and impeachment material related to the [CS] involved in this case."  Dkt. No. 71 (D&O), pp. 10-11.

[4] The Government confirmed during oral argument before this Court that Bongiovanni will not be called as a witness at the instant trial.  Dkt. No. 85, p. 17.

investigation, meaning any acts of misconduct in other cases are not relevant to the crime charged against Defendant.

The Court concludes that these findings oversimplify the *Brady/ Giglio* issue and that further proceedings are required.

For *Giglio* material, a "witness" is not only a testifying witness; it also means a non-testifying hearsay declarant whose out-of-court statement the Government seeks to introduce at trial and who is subject to impeachment pursuant to Federal Rule of Evidence 806.  *See United States v. Jackson*, 345 F.3d 59, 70-71 (2d Cir. 2003) ("*Brady* and its progeny may require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant.  A contrary conclusion would permit the government to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify."), *cert. denied* 541 U.S. 956 (2004).

Thus, the Second Circuit made it clear in *Jackson* that the deciding question for what constitutes *Giglio* material is not whether a witness will testify.  Indeed, subsequent case law in this Circuit citing *Jackson* reiterates that finding.  *See United States v. Percoco*, 16-CR-776 (VEC), 2018 U.S. Dist. LEXIS 232236, *4 n.1 (S.D.N.Y. June 14, 2018) ("The Government's motion also proceeds from the mistaken assumption that material relevant to impeach [the cooperating witness] is inadmissible at trial because [the cooperating witness] is unlikely to testify . . . [Rather,] the Government has an obligation to turn over *Giglio* material regarding hearsay declarants whose out of court statements will be admitted at trial, regardless of whether the hearsay declarant testifies."); *see also United States v.*

*Taylor*, 17 F. Supp. 3d 162, 178 (E.D.N.Y. Apr. 24, 2014) ("[T]he government must [also] disclose exculpatory and impeachment materials pertaining to nontestifying witnesses."); *United States v. Mitchell*, 11-CR-00057-RJA-JJM-1, 2012 U.S. Dist. LEXIS 189542, *30-33 (W.D.N.Y. July 30, 2012) ("I agree with defendant . . . that the government should disclose any *Brady* material, whether or not it involves a testifying witness."), *adopted* at 11-CR-57, Dkt. No. 140.

The crux of the issue is well explained by the Southern District in *United States v. Perez*, 05 Cr. 441 (PKL), 2005 U.S. Dist. LEXIS 24444, *11-12 (S.D.N.Y. Oct. 20, 2005): ". . . *Giglio* material must be disclosed regardless of whether the material concerns a testifying witness or a hearsay declarant . . . *The issue does not turn on whether the declarant is testifying in court, but whether the declarant's credibility has been put into issue and can thus be attacked.*") (emphasis added).

Both parties reference yet another criminal case in this District, *United States v. Tyshawn Brown*, 19-CR-222-EAW-MJR, with respect to the *Brady/ Giglio* issue and Bongiovanni.

*Brown* also appears to have been a relatively simple case at the outset, a single-defendant case involving two controlled buys and two charges of possession with intent to distribute, and distribution of, cocaine. In *Brown*, the defense likewise asserted that they were entitled to *Brady/ Giglio* material regarding Bongiovanni and his federal case because Bongiovanni was the lead case agent in *Brown*.[5]

---

[5] The defense moved for access to, among other things, Bongiovanni's personnel files, DEA and FBI files as to him, and evidence in the Bongiovanni case. Defendant claimed that, because Bongiovanni was the lead case agent in the *Brown* case, "evidence that he generally engaged in criminal conduct, lied to other law enforcement officials, created false DEA-6 reports, or accepted bribes in other cases, before or around the time he was investigating Brown is, in and of itself, *Brady* material, regardless of whether

12

Magistrate Judge Roemer issued a D&O in *Brown*, just as he did in the instant case, denying Defendant's motion to compel production of the requested Bongiovanni files, among other motions.[6] In comparing that D&O to the one in this case, the reasoning of the Magistrate Judge is practically the same, and the Government made essentially the same arguments – that it had searched the Bongiovanni files and found no *Brady/ Giglio* material, and that it did not intend to call Bongiovanni at the trial but rather a number of other agents who had been involved in the investigation.

After the *Brown* D&O was issued, the defense filed an appeal objecting specifically to the *Brady/ Giglio* discovery decision. Following the parties' briefing on the issue, a lengthy oral argument took place before District Judge Elizabeth A. Wolford, at the end of which she asked the Government to conduct a broader review of its *Bongiovanni* file and scheduled further submissions from the parties before she would decide the appeal from the D&O (Judge Wolford also stated that she would permit the parties to submit their supplemental papers *ex parte* and *in camera* if they felt the need to do so). Noting the clearly erroneous and contrary to law standard on an appeal from a Magistrate Judge's non-dispositive discovery decisions, which is "a pretty deferential review," Judge Wolford stated:

---

Bongiovanni engaged in these actions specifically with respect to his investigation of Brown or participation in the controlled purchases." Dkt. No. 23, pp. 14-15.

[6] It is noted in the *Brown* D&O that during oral argument on the omnibus motions, Magistrate Judge Roemer had actually instructed the Government to submit a written statement that the Government searched the files in both the *Brown* case and the *Bongiovanni* case and indicated (1) there was no *Brady* material in either, and (2) Brown's name did not appear anywhere in the *Bongiovanni* case file. Magistrate Judge Roemer had wanted to know if Brown's name came up in the *Bongiovanni* case and, if so, to then provide the file to him to conduct an *in camera* inspection to see if the material was exculpatory of Brown.

> I do think it's erroneous, I'll say right now, I think it's
> erroneous in [Magistrate Judge Roemer's] decision for him
> to [conclude that] the linchpin [is], so to speak, whether or
> not Bongiovanni is going to testify or not. I don't think that
> is the linchpin for whether or not there are Brady
> obligations that run to the government that require the
> disclosure of information to Mr. Brown's counsel.

19-CR-222, Dkt. No. 46 (9/17/2020 Oral Argument Tr.).

As explained by Judge Wolford, the defense may be entitled to *Giglio* material (A) if the agent testifies at the trial (and here, the Government states that it does not intend to call Bongiovanni to the stand), or (B) if the agent is a "hearsay declarant," even if he is not testifying. As to (B), for example, if Bongiovanni authored a report used in this case, and another agent who was involved in the investigation testifies at trial but is relying on that report authored by Bongiovanni, such evidence would fall under *Giglio*.

By way of another illustration, in *United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017), the Court held that "although case agents' illegal behavior in connection with [their] investigation of . . . an online marketplace operated by defendant, was 'deeply troubling,' evidence concerning the agents' corruption was not *Brady* information because it was not exculpatory or impeaching of the government's trial evidence." Dkt. No. 71 (D&O), pp. 14-15 (summarizing the pertinent holding in *Ulbricht*). What the Magistrate Judge missed in his summary of the *Ulbricht* case, however, is that the defendant in that case did not "identify any particular evidence introduced by the government at trial that [was] traceable to either [of the corrupt case agents], or the admissibility of which depend[ed] on either agent's integrity." *Ulbricht*, 858 F.3d at 113. The *Ulbricht* Court focused on the "pervasiveness" of the

agents' role in the investigation of defendant, and concluded, "The relevant question, on which none of Ulbricht's arguments casts any light or raises any doubt, is *whether any particular item of evidence was tainted in some way by the misconduct of [the two agents]*." *Id.* (emphasis added).

In *Brown*, the case before Judge Wolford, the Government conceded that Bongiovanni had been the lead case agent in that case. The defense argued, "Bongiovanni is a witness in this case whether he testifies or not. The Government's attempts to insulate this case from the clutches of Bongiovanni is impossible. He and his criminal conduct permeate the entire investigation." The defense further argued that Bongiovanni was "not only the lead agent, [but] he [also] filled out the only police paperwork in [the *Brown*] case." Moreover, there were also recorded phone calls made from the CS, as directed by Bongiovanni, to Brown. In conclusion, the defense reasoned, "there are issues with this case that relate specifically to Bongiovanni and how he handled it. And I don't see how the prosecution can possibly say, well, we're just not going to call him."

A couple months after the argument before Judge Wolford in *Brown*, the docket reflects that the parties filed sealed, *ex parte* supplemental submissions regarding the defense objections to Magistrate Judge Roemer's D&O, which the Court cannot access. Then, a couple months after that, the parties attended separate, *ex parte* and in Chambers proceedings with Judge Wolford via Zoom. The day after the Government met *ex parte* with the Court, on January 21, 2021, an order of dismissal was docketed dismissing the Indictment against defendant Brown.

15

In other words, the D&O was never adopted by Judge Wolford, and the Indictment was dismissed by the Government.[7]

Here, Defendant argues that the Indictment against him should be dismissed as it was in the *Brown* case because it involves the same *Brady/ Giglio* issue that appears to have resulted in the dismissal. He argues that "at the very least," the Court should conduct an *in camera* review of the Government's *Bongiovanni* file.[8]

The Court concludes that it cannot decide the issues pertinent to the *Brady/ Giglio* dispute on the record currently before it, namely, the extent of Bongiovanni's involvement in the instant case. Thus, the Court refers this issue back to the Magistrate Judge to resolve, which may require further briefing and/or argument, a hearing, and/or *in camera* review.

## **CONCLUSION**

Based on the foregoing, Defendant's appeal (Dkt. No. 75) from the D&O (Dkt. No. 71) is GRANTED IN PART and DENIED IN PART, as is Defendant's motion (Dkt. No. 83) for the Court to refer certain discovery issues back to the Magistrate Judge; and it is further

---

[7] Defendant also mentions that there were some allegations made in the Bongiovanni case regarding Bongiovanni having targeted racial minorities. In *Brown*, the AUSA in the Bongiovanni case acknowledged that there was an allegation in the Bongiovanni Indictment that "he made a statement to a fellow agent that they should only be going after non-Italians and used some derogatory [language]." Dkt. No. 46, p. 29. Judge Wolford directed the Government to provide the grand jury transcript from Bongiovanni where that allegation came from, *ex parte* as well (Dkt. No. 46, pp. 42-43), so Judge Wolford likely reviewed those materials prior to the *Brown* case being dismissed.

[8] An *in camera* review of the entirety of the Bongiovanni file would likely be a massive undertaking, according to the AUSA on the Bongiovanni case. *See* Dkt. No. 46, p. 31 (noting that if Judge Wolford were to conduct an *in camera* review in the future, "it's volumes and volumes of information").

ORDERED that the issues the Court is not re-referring to the Magistrate Judge are affirmed for the reasons set forth in the D&O; and it is further

ORDERED that the Magistrate Judge shall revisit Defendant's demand for disclosure of the CS's identity and demand for information concerning A.H.'s relationship with Defendant only if the Government's anticipated decision whether or not to call the CS as a witness at trial changes that calculus; and it is further

ORDERED that the Magistrate Judge is directed to revisit Defendant's demand concerning the lack of audio on the video recording, only if the finding that there is some audio that "cuts out" partway through the video changes the Magistrate Judge's analysis of the Government's Rule 16 discovery obligation; and it is further

ORDERED that the case is otherwise remanded to Magistrate Judge Roemer for resolution of Defendant's demand for *Brady/ Giglio* material, particularly the extent of Bongiovanni's involvement in this case, including any interactions with the CS and Defendant, and any authored reports or other investigative materials that might be used at trial; and it is further

ORDERED that the Magistrate Judge shall explore, to the extent deemed necessary, whether there is a conflict or potential conflict with defense counsel's firm previously representing Bongiovanni at the outset of that case, as raised *sua sponte* by the Court during oral argument of this appeal (*see* Dkt. No. 85, pp. 14-15).

**SO ORDERED.**

       *s/Richard J. Arcara*
       HONORABLE RICHARD J. ARCARA
       UNITED STATES DISTRICT COURT

Dated: April 6, 2022
Case 1:19-cr-00221-RJA-MJR   Document 86   Filed 04/06/22   Page 18 of 18